J-A28045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

IN RE: J.D.M.T., A MINOR : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
APPEAL OF: D.M.C., MOTHER :
:
:
:
:
:
:
: No. 1913 EDA 2024

Appeal from the Decree Entered June 25, 2024
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): 2024-A0047

BEFORE: PANELLA, P.J.E., STABILE, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.: **FILED MARCH 11, 2025**

Appellant D.M.C. (Mother) appeals from the decree dated June 25, 2024, terminating her parental rights to J.D.M.T. (Child).[1] On appeal, Mother contends that the Montgomery County Office of Children and Youth (the Agency) failed to establish grounds to terminate her parental rights by clear and convincing evidence. We affirm.

The record reflects that the Agency became involved with this family in December of 2022.[2] *See* N.T., 6/25/24, at 22. A former Agency caseworker who worked with the family, Cory Bridges-Cox, testified without objection that

_____

[1] Child was born in October of 2019 and was four-and-one-half years old on the date of the termination of parental rights hearing. *See* N.T., 6/25/24, at 149.

[2] On June 25, 2024, the trial court also entered a decree terminating Father's parental rights to Child. Father has not filed an appeal and is not a party to the instant appeal.

Child lived with Father after an incident that Father described as Mother purportedly "throwing Child" when Child was a baby. *See id.* at 23.[3] While Child was living with Father, the Agency asked the police to conduct a welfare check on Child at Father's home due to concerns over Father's drug use. *See id.* at 25-26. Inside Father's apartment, which was in disarray, the police observed what appeared to be controlled substances in both powder and rock form strewn throughout the apartment, out in the open, and easily accessible to Child. Father and Child were not present. Subsequently, Father directed police to an apartment where Child was in the care of a woman known to Father. *See id.* at 11-12. The Agency obtained an emergency custody order for Child on January 26, 2023 and removed Child. *See id.* at 28. Following a shelter care order dated January 27, 2023, the trial court adjudicated Child dependent and awarded legal and physical custody of Child to the Agency on January 31, 2023, and Child was placed in foster care. *See id.*; *see also* Agency Ex. 9.[4]

On January 30, 2023, Mr. Bridges-Cox met with Mother at the home she shared with Child's maternal grandmother. In an effort to determine if Mother could be a potential resource for Child, Mr. Bridges-Cox administered drug

---

[3] On cross-examination, Mr. Bridges-Cox testified that his source for the information that Mother "threw" Child was Father. *See* N.T., 6/25/24, at 39. We note that the record does not provide further details to clarify what actually occurred during this incident.

[4] Agency Exhibit 9 is a case timeline in this matter that was admitted without objection at the hearing. *See* N.T., 6/25/24, at 80.

screens to both women. Mother tested positive for marijuana and alcohol, and maternal grandmother tested positive for marijuana, alcohol, cocaine, and other controlled substances. *See id.* Mother also informed Mr. Bridges-Cox that the Philadelphia Department of Human Services (DHS) had previously opened two other cases involving her treatment of Child. The first matter involved Mother providing inadequate medical care to Child in 2019, and the second case involved substance abuse in 2022. With respect to the substance abuse case, Father had taken Child to the hospital, and due to Father's intoxication at the hospital, the hospital reached out to Mother. However, when Mother arrived at the hospital, she too was intoxicated, and the hospital would not release Child to either Mother or Father's custody. *See id.* at 30-31. Further, Mother informed Mr. Bridges-Cox that Child remained in Father's care, and she had not seen Child in approximately one month at the time of the interview. *See id.* at 36.

Ultimately, Child was placed with his current foster parent (Foster Mother) who is Child's maternal cousin and an adoptive resource for Child. *See* N.T., 6/25/24, at 47, 58, 109. Following permanency review hearings on June 13, 2023, August 4, 2023, November 9, 2023, and February 6, 2024, the trial court concluded that foster placement remained necessary, Mother made only minimal progress toward her Family Services Plan goals, Mother failed to visit Child as scheduled, Mother failed to communicate with the Agency, and legal and physical custody of Child would remain with the Agency.

*See* Perm. Rev. Orders, 6/13/23, 8/4/23, 11/9/23, and 2/6/24; *see also* Agency Ex. 9 (case timeline).

The Agency offered Mother reunification services, and at first, Mother complied, but Mother did not continue her compliance with the reunification specialist and the service was closed. Further, the visitation coach service was closed. Mother was offered weekly visits, but she stopped visiting with Child in person in April of 2023. Mother indicated that she needed to visit on a different day due to her work schedule, and the Agency offered to accommodate her schedule, but Mother failed to provide proof of employment until March of 2024. *See* N.T., 6/25/24, at 54-56, 85-87. Mother did not attend any in-person visits with Child from April 10, 2023, through January 26, 2024. During that time, Mother had telephone visits with Child, but Child's behavior worsened following the calls, further, the Agency wanted to promote in-person contact between Mother and Child, therefore, the Agency requested the phone calls stop. The trial court then ordered an end to the visitation calls on January 18, 2024. *See id.* at 87-90. Throughout the case, Mother has not sought to check on Child while in placement, and has not attended any meetings or appointments, except one doctor's appointment. *See* N.T. at 92-93. Nor has Mother offered any plans as to how she would care for Child, including daycare, medical or behavioral issues of Child. Child has been placed in and removed from two foster care homes because of behavioral issues, and currently, is successfully placed in kinship care with Foster Mother. *See* N.T.

at 82, 87, 94. On April 10, 2024, the Agency filed a petition to involuntarily terminate Mother's rights.

At the termination hearing, the trial court further explained:

The [Agency] filed petitions to terminate the parental rights of [Mother and Father]. [C]hild is now four and a half years old.

. . . . Both petitions allege [23 Pa.C.S. §] 2511(a)(1)[(2), and (8)] as a basis for terminating parental rights. . . .

*   *   *

[M]other and [F]ather have both been represented by court appointed counsel throughout this proceeding, and [C]hild has also been represented by court appointed legal counsel. [M]other was present for the trial, and [F]ather was not present for the trial.

In fulfilling its duty under Section 2313(a), this [c]ourt must appoint legal counsel to represent . . . the children in a contested termination of parental rights hearing. In addition, if the same counsel appointed to represent the child previously acted as GAL for this child, this [c]ourt must determine whether counsel has no conflict that would prevent counsel from representing the legal interest of the child or children. If this [c]ourt makes an express finding that there is no conflict, then there is no impediment to the counsel serving as legal counsel for the child.

Based upon the evidence and the statement made by counsel for [C]hild, this [c]ourt expressly finds that there is no conflict of interest between the child's legal rights and the child's best interest, and therefore, there was no need to appoint a separate guardian *ad litem* for [C]hild. Further, this [c]ourt finds that because there was no conflict of interest, there was no impediment to counsel zealously representing [C]hild as legal counsel.[5]

_____

[5] We note that the trial court specifically determined that counsel could represent Child's legal interests and best interests as those interests did not conflict. **See** N.T. 6/25/24, at 150-51; **see also In re Adoption of K.M.G.**, *(Footnote Continued Next Page)*

\*   \*   \*

> The evidence presented in [c]ourt today revealed that [M]other has never made [C]hild a priority. The [c]ourt has no idea when the last time [M]other had unsupervised contact with [Child]. Moreover, [Mother] chose to not physically see [Child] from April 19, 2023 to January 26, 2024. This is an incredibly long period of time with absolutely no physical contact between [M]other and [Child].
>
> Despite testimony that [Mother] was provided opportunities, she never attended medical appointments or visitations with the school. She never asserted herself to help deal with [C]hild's behavior issues.

N.T., 6/25/24, at 149-53.

On June 25, 2024, the trial court involuntarily terminated Mother's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (8), and (b). Mother filed a timely appeal from the decree terminating her parental rights and simultaneously filed concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court did not file an opinion but filed a Rule 1925(a) statement explaining that its rationale for terminating Mother's parental rights is stated on the record at the hearing held on June 25, 2024, at pages 148 through 160. *See* Rule 1925(a) Statement, 8/13/24, at 1; N.T., 6/25/24, at 148-60.

On appeal, Mother raises the following issues:

_____

240 A.3d 1218, 1224, 1235 (Pa. 2020) (holding that an attorney appointed as counsel to represent a child's legal interests may also serve as the child's guardian ad litem (GAL), representing the child's best interests, where the trial court determines that the child's legal interests do not conflict with the GAL's view of the child's best interests); *In re T.S.*, 192 A.3d 1080, 1082 (Pa. 2018)).

1. Did the trial court err in terminating [Mother's] parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) where evidence at trial failed to establish by clear and convincing evidence that . . . Mother, by conduct continuing for a period of at least six months immediately preceding the filing of the petition evidenced a settled purpose of relinquishing parental claim to [C]hild or has refused or failed to perform parental duties?

2. Did the trial court err in terminating [Mother's] parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) where evidence at trial failed to establish by clear and convincing evidence that repeated and continued incapacity, abuse neglect or refusal of the parent has caused [C]hild to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse neglect or refusal cannot or will not be remedied by the parent?

3. Did the trial court err in terminating [Mother's] parental rights pursuant to 23 Pa.C.S. § 2511(a)(8) where evidence at trial failed to establish by clear and convincing evidence that the conditions which led to the removal or placement of [C]hild for over twelve months continue to exist and termination of parental rights would best serve the interest and welfare of [C]hild?

Appellant's Brief at 6-7 (some formatting altered).[6]

Our standard of review is well-established:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

_____

[6] In her brief, Mother states that she withdraws her challenge to the trial court's decree concerning 23 Pa.C.S. § 2511(b). **See** Mother's Brief at 7.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*In re M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (citations and quotation marks omitted). "[T]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re Q.R.D.*, 214 A.3d 233, 239 (Pa. Super. 2019) (citation omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis

concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We note that we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm an order terminating parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

### Section 2511(a)(2)

Mother contends that the trial court erred when it concluded that there was clear and convincing evidence to justify involuntarily terminating her parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8). Mother's Brief at 17-27. Specifically, under Section 2511(a)(2), Mother argues that the Agency failed to prove that there is a continued incapacity, abuse, neglect, or refusal to parent Child. *Id.* at 21. Mother claims that her employment has been an obstacle, and she asserts that there was no testimony that the Agency were offering any help in finding daycare. *Id.* at 22. Mother contends that if there was neglect there no longer is, and she has remedied or is working to remedy the conditions that led to the Agency filing the petition to terminate her parental rights. *Id.* at 23-24.

Section 2511(a)(2) provides as follows:

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

- 9 -

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

To prove the applicability of Section 2511(a)(2), the party petitioning for termination must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021) (citation omitted).

Further, this Court has explained:

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are "not limited to affirmative misconduct." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

Unlike subsection (a)(1), subsection (a)(2) does not emphasize a parent's refusal or failure to perform parental duties, but instead emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being. Therefore, the language in subsection (a)(2) should not be read to compel courts to ignore a child's need for a stable home and strong, continuous parental ties, which the policy of restraint in state intervention is intended to protect. This is particularly so where disruption of the family has already occurred and there is no reasonable prospect for reuniting it.

*In re E.A.P.*, 944 A.2d 79, 82 (Pa. Super. 2008) (internal citations and quotation marks omitted) . . . . Thus, while "sincere efforts

- 10 -

> to perform parental duties," can preserve parental rights under subsection (a)(1), those same efforts may be insufficient to remedy parental incapacity under subsection (a)(2). "Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities." [**A.L.D.**, 797 A.2d at 340]. A "parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." **Id.**

**In re Z.P.**, 994 A.2d 1108, 1117-18 (Pa. Super. 2010) (some citations omitted and formatting altered).

It is well-established that "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." **In re Adoption of R.J.S.**, 901 A.2d 502, 513 (Pa. Super. 2006).

Here, at the permanency review hearings held on June 13, 2023, August 3, 2023, November 9, 2023, and February 6, 2024, the trial court found that Child's placement remained necessary, Mother made only minimal progress toward alleviating the circumstances which necessitated Child's placement, and that Mother made only minimal efforts to complete her Family Service Plan goals, and that Mother had failed to visit Child as scheduled and failed to communicate with the Agency. **See** Perm. Rev. Orders, 6/13/23, 8/4/23, 11/9/23, and 2/6/24; **see also** Agency Ex. 9 (case timeline). The trial court further explained:

The evidence presented in [c]ourt today revealed that [M]other has never made [C]hild a priority. The [c]ourt has no idea when the last time [M]other had unsupervised contact with [Child]. Moreover, she chose to not physically see her son from April 19, 2023 to January 26, 2024. This is an incredibly long period of time with absolutely no physical contact between [M]other and [Child].

N.T., 6/25/24, at 152-53. Specifically with respect to Section 2511(a)(2), the trial court explained that the facts of the case:

indicate to me by clear and convincing evidence that [M]other . . . [is] not capable of performing minimal parental duties. While we recognize [that M]other is currently making efforts to create stable housing and employment, you cannot postpone being a parent until it is more convenient. There's no evidence that [Mother] has ever provided a stable home for [C]hild, and during the period that [the Agency] has been involved, [Mother] has never had unsupervised visitation. [Mother] also chose to not see [C]hild for nine months due to an alleged work conflict.

*Id.* at 155.

Based on our review of the record, we discern no abuse of discretion by the trial court. *See M.E.*, 283 A.3d at 829. For nearly all of Child's four and one-half years of life, Mother has not been involved with Child nor has she had an unsupervised visit with Child. Further, the record reflects that throughout this case, since 2022, Mother has not demonstrated that reunification with Child is possible. It is apparent from Child's reactions and behavior during and after visits with Mother, that contact with Mother does not benefit Child. The record reflects that Child acts out, was dismissive and demanding toward Mother during visits, and that afterward, Child regressed to routinely soiling himself, hitting people, and throwing tantrums. *See* N.T., 6/25/24, at 47, 53-56. For

approximately nine months, from April 19, 2023 to January 26, 2024, Mother did not visit Child. We agree with the trial court assessment that nine months is an incredibly long period of time for absolutely no physical contact between Mother and Child. *See* N.T., 6/25/24, at 149-53.

Mother completely stopped visiting Child in person allegedly because of her work schedule and only managed phone visits. However, when the trial court stopped the phone visits, only then did Mother manage to arrange her work schedule to allow for in-person visitation, even though the Agency contends that Mother failed to provide proof of employment until March of 2024. *See id.* at 87, 90. Concerning communication, Foster Mother and an Agency caseworker, Ms. Shaquita Scott, testified that Mother never contacts Foster Mother or the Agency to check on Child. *See id.* at 57, 92.

Further, although Mother was able to find an apartment for herself a month prior to the termination hearing, the Agency caseworker testified that Mother had no furniture and no food in the home for Child. *See id.* at 86-87. On this record, Mother has failed to perform parental duties during Child's lifetime such that the repeated and continued incapacity has caused Child to be without parental care necessary for his physical and mental well-being. We agree with the trial court that the conditions that led to the Agency's involvement cannot and were not remedied by the date of the termination hearing of June 25, 2024, despite the Agency's involvement with Child since 2022, including seventeen months of the custody of Child in foster care.

As the trial court noted, Mother has never made Child a priority, and the trial court could not determine when the last time Mother had unsupervised contact with Child. *See* N.T., 6/25/24, at 152-53. At the time of the termination hearing, the Agency had custody of Child for **seventeen months** from January of 2023 to June of 2024. Further, although Mother made some efforts to connect with Child at times, her efforts were minimal and did not show that she was utilizing the resources made available to her and taking affirmative steps to overcome obstacles to maintain a parent/child relationship. Section 2511(a)(2) "emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being[,]" particularly "where disruption of the family has already occurred and there is no reasonable prospect for reuniting it." *Z.P.*, 994 A.2d at 1117. A "parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *Id.* at 1118. We reiterate that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *See id.* at 1117-18; *see also R.J.S.*, 901 A.2d at 513 (explaining that "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities").

For these reasons, we discern no abuse of discretion by the trial court in concluding that Mother's repeated and continued incapacity or refusal has caused Child to be without essential parental care, control or subsistence and

that termination was warranted under Section 2511(a)(2). Further, the conditions and causes of Mother's incapacity, abuse, neglect or refusal cannot or will not be remedied. **See A.H.**, 247 A.3d at 443; **see also Z.P.**, 994 A.2d at 1117-18. For the reasons stated above, we discern no abuse of discretion by the trial court in concluding that termination was appropriate under Section 2511(a)(2).[7] Accordingly, Mother is not entitled to relief on this claim.

## Section 2511(b)

As noted, Mother withdrew her challenge to the trial court's termination of her parental rights under Section 2511(b). In any event, even if Mother had not abandoned a challenge under Section 2511(b), we would agree with the trial court's conclusions which properly gave primary consideration to the developmental, physical, and emotional needs and welfare of Child. **See In re C.L.G.**, 956 A.2d 999, 1008-09 (Pa. Super. 2008) (*en banc*).

Section 2511(b) states in relevant part:

> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. . . .

23 Pa.C.S. § 2511(b).

---

[7] We reiterate that we need only agree with the trial court as to one subsection of Section 2511(a), as well as Section 2511(b), to affirm an order terminating parental rights. **See B.L.W.**, 843 A.2d at 384.

"[T]he focus in terminating parental rights is on the parent, under Section 2511(a), whereas the focus in Section 2511(b) is on the child." **C.L.G.**, 956 A.2d at 1008 (citation omitted). This Court has explained:

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, . . . the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

**In re Adoption of C.D.R.**, 111 A.3d 1212, 1219 (Pa. Super. 2015) (citations omitted and formatting altered). "Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." **In re T.S.M.**, 71 A.3d 251, 268 (Pa. 2013) (citation omitted);[8] **see also In re K.T.**, 296 A.3d 1085, 1113 (Pa. 2023) (explaining that a Section 2511(b) analysis must also consider factors such as "the child's need for permanency and length of time in foster care . . . whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible

---

[8] Foster Mother is an adoptive resource for Child, and Agency caseworker, Ms. Scott, testified that it was in Child's best interests for the court to terminate Mother's parental rights so that Foster Mother could adopt Child. **See** N.T., 6/25/24, at 58, 109-110.

needs of love, comfort, security, safety, and stability" (footnote omitted)). "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted). The question is whether the bond between the parent and the child "is the one worth saving or whether it could be sacrificed without irreparable harm to" the child. *Id.* at 764. "Section 2511(b) does not require a formal bonding evaluation" and caseworkers may offer their opinions and evaluations of the bond. *Z.P.*, 994 A.2d at 1121 (citation omitted).

Regarding Section 2511(b), the trial court concluded:

In this case, the testimony clearly established that although there is affection and each parent cares for [C]hild, the birth parents have not maintained consistent and sufficient contact and there is no parental bond between [C]hild and either birth parent. In this case, the birth parents have not provided a home, have not met [C]hild's needs, have not maintained consistent and strong parent-child relationship.

[M]other's desire to start over at this time is insufficient to meet [C]hild's needs for consistent and reliable love, affection, and responsibility.

I conclude that the emotional needs and welfare of [C]hild can best be met by termination of the parental rights of both birth parents and that [C]hild will not suffer a detriment as a result of termination of parental rights of his birth parents.

There was no clear and convincing evidence presented to show the existence of a parental bond between [C]hild and [M]other . . . . By contrast, I find that a bond has developed between [F]oster [Mother] and [C]hild that has been described as strong and loving. It was clear by [F]oster [Mother's] testimony that she really loved

[C]hild and wanted to help him be a kid and adjust to living in a family home.

N.T., 6/25/24, at 158-60. Therefore, the trial court concluded that Child will not be irreparably harmed by termination of Mother's parental rights. *See id.* at 160.

Accordingly, even if Mother's Section 2511(b) claim was not waived, we would agree with the trial court's analysis of the evidence presented at the termination hearing, which was supported by the record, including that Child has a parental bond with Foster Mother, and Foster Mother provides for Child's physical, developmental, and emotional needs.

For these reasons, we conclude that the trial court's findings are supported by competent, clear, and convincing evidence in the record and we discern no error in the trial court's legal conclusions, nor abuse of discretion in its decision to terminate Mother's parental rights to Child pursuant to Section 2511(a)(2) and (b). *See M.E.*, 283 A.3d at 829; *see also T.S.M.*, 71 A.3d at 267. Accordingly, we affirm.

Decree affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/11/2025